MONCURE, J.
This case involves the doctrine of what is familiarly called “the wife’s equity;” the origin and foundation of which are involved in much doubt, but which has been long and firmly established in England; 2Story’s Eq. 4 1402, 1407, &c.; and though but recently recognized in this state, is now well established here also. Gregory’s adm’r v. Mark’s adm’r, 1 Rand. 355; Gallego v. Gallego’s ex’or, 2 Brock. R. 285; Browning v. Headley, 2 Rob. R. 340; Dodd’s trustee v. Geiger’s adm’r, 2 Gratt. 98; James, &c. v. Gibbs, &c., 1 Pat. & Heath 277. I will not attempt to 'investigate it fully, but will state only so much of it as seems to be pertinent to the present case. The authorities on the subject are collected and commented on in 1 Lead. Cas. in Eq. Am. ed. 1859, top paging, 453-501.
The doctrine may be briefly stated thus: that a wife is entitled to an equitable settlement out of her property, not only against her husband, but against all creditors of, and purchasers from him, whenever it is recoverable only in a court of equity, or the aid of that court is actually invoked for its recovery; unless the husband has become a purchaser of the property by an antenuptial contract with the wife. If it be recoverable at law, and the aid of a court of equity be not actually invoked to recover it, her equity does not exist. And it ceases to exist, though the property be recoverable in equity, whenever it has been actually recovered or received without any claim by her to a settlement. Whenever the husband, in right of his wife, has obtained possession of, and title to her property, his own title jure marlti, becomes complete; and the property, to the extent of his title, is subject to his right of disposition, and to the claims of creditors and purchasers, like any other property of his any otherwise acquired. 2 Story’s Eq. ? 1403. If he or they have occasion to go into a court of equity for its assistance in regard to property to which his title has thus become complete; that court cannot, as the price of its assistance, impose upon him or them the *851 terms of a settlement out of it on the wife. The relief sought in such a case, being due ex debito justitiaj, must be decreed unconditionally. It may be laid down as a universal rule, that when property, by being reduced into the husband’s possession, has once been released from the wife’s equity, it can never again be subjected to it. I mean of course the wife’s equity, technically so called; which overrides the claims of the husband “and all persons claiming under or against him. I Lead. Cas. in Eq- 468, 498. Property acquired by the husband jure mariti, like any other property of his, may become liable to the equitable claims oí the wife in a suit for a divorce a mensa et thoro, and perhaps in a suit for alimony. Id. 496-7. But such liability is subordinate to prior liens acquired under or against the husband.
It seems to have been at one time considered that real estate was not subject to the wife’s equity; and, at all events, that it was not so subject if it were not a trust estate, but one in its nature legal, which becomes from collateral circumstances the subject of a suit in equity; as where the legal estate happens to be outstanding in a mortgagee. But both of these points were decided affirmatively in the case of Sturgis v. Champneys, 5 Mylne & Cr. 97; reported also in 9 Law J. N. S. p. 100. In that case the wife of an insolvent was entitled for her life to real estate which had been devised to her without the intervention of trustees; but the legal title was outstanding in certain mortgages, and the assignee of the insolvent was obliged to file a bill to make his title (subject to the incumbrances) effectual. It was held by Lord Chancellor Cottenham (reversing the decision of the vice chancellor), that the wife was entitled to a settlement out of the rents and profits of the estate during the coverture. In Hanson v. Keating, 4 Hare, 1, 30 Eng. Ch. R. 1, Vice Chancellor Wigram, who had been counsel for the assignee of the husband in Sturgis v. Champneys, remarked, that prior to that case the opinion of the profession had, he believed, become settled, that estates in land were not subject to the same equity, upon the broad and important principle of preserving a strict analogy between legal and equitable estates in land. But, in deference to that judgment, he followed it, !‘although (he further remarked), “if that case were out of the way, I should probably have decided otherwise. There would be no difficulty (he said) in distinguishing the facts of this case from those in Sturgis v. Champneys; but the reasoning in that case would remain, and I cannot disregard it.” That case has al.so been followed by other cases, and its authority seems to be now fully established in England. Freeman v. Fairlie, 11 Jur. 447; Newenham v. Pemberton, 17 Law J. Equity N. S. p. 99; S. C. 1 D. G. & Sm. 644. I have seen no American case in conflict with it. In Hold’s trustee v. Geiger’s adm’r, 2 Gratt. 98, no question was raised as to the liability of real estate to the wife’s equity; but it was held not to be liable in that case, because the husband had the legal title arid possession. See also Van Duzer v. Van Duzer, 6 Paige’s R. 366; and Wickes v. Clarke, 8 Id. 161. In James, &c. v. Gibbs, &c., 1 Pat. & Heath 277, the Special court of appeals referred to and recognized the case of Sturgis v. Champ-neys, and decreed a settlement on the wife out of her real estate. It is unnecessary, however, in my view of this case, to decide the question, and I therefore express no opinion upon it, but will assume, for the purposes of the case, that the doctrine is alike applicable to real and personal estate.
As to the amount of the wife’s property to be settled; the general rule atone time was, to settle upon her one-half of the subject. 1 Roper on Husband & Wife 260; 1 Leading Cas. in Eq. edition of 1859, p. 483. But this is a matter in the discretion of the court, which will take into consideration the amount of the wife’s fortune already received by the husband, or any previous settlement which may have been made. Id. Accordingly, in Coster v. Coster, 9 Sim. R. 597, three-fourths of the fund was settled on the wife by Sir L. Shadwell, V. C. ; and in Napier v. Napier, 1 Drew. & Walk. 407, six hundred pounds out of a fund “'amounting to one thousand pounds, were settled on her by Ld. Ch. Sug-den. It has been said that the court will not, except perhaps under very peculiar circumstances, settle the whole of the property on the wife. And in Beresford v. Hobson, 1 Madd. R. 362, in which the master, upon a reference, had approved of the settlement of the whole, Sir Thomas Plumer. V. C., sustained the exception taken to the report; observing, after an elaborate review of the authorities, that the question in most cases had been, how much the wife should have; and in determining that, the court had exercised a discretion, and had no! tied itself down to any precise rule, but bad never given the whole. But the whole has been given in many subsequent English cases, which are cited in 1 Lead. Cas. in Eq. 485. The American cases seem to be to the same effect, many of which are cited in the notes of Hare & Wallace to that valuable work, p. 499. This court, in Browning v. Headley, 2 Rob. R. 340, gave the whole to the wife. The true rule on the subject seems therefore to be, that the settlement should be reasonable and adequate, and may be of part or the whole of Ihe property, according to the sound discretion of the court upon all the circumstances of the case. The usual practice is to refer it to a commissioner to enquire and report what would be a reasonable and adequate settlement. But the court may decide this question for itself, if there be sufficient material in the record for the purpose: and if it plainly appear that the whole property subject to the settlement is not more than adequate, a reference is of course unnecessary.
As to when the provision for the wife should take effect; this, also, is a matter *852 of discretion with the court upon all the circumstances. If her husband lives with and supports her, it may be made to take effect when he ceases to do so, or at his death. But *if he has deserted or ill treated her, or is insolvent, or is unable or fails to support her, it will be directed to commence immediately. 1 Bead. Cas. in Eq. 499.
The wife’s equity is so substantial an interest that it will constitute a valuable consideration for a postnuptial settlement by the husband upon her (made .while the equity exists), which will be sustained against his creditors, to the extent of the equity, by a court of chancery. Id. 500. “The same circumstances which would induce the court (said the V. C. in Wikes v. Clarke, 8 Paige’s R. 166) to compel a settlement by the husband, or those claiming under him or in his right, will operate to uphold a deed of settlement already made, to the same extent that would be required if one should be directed to be made under the view of the court.”
The equity of the wife will be administered to her, not only in a suit in which the husband or his assignee is plaintiff, seeking the aid of a court of equity to recover her property; but generally, also, in a suit brought by her or her trustee for the purpose of asserting it. This was at one time doubted; it being supposed that the jurisdiction rested solely on the ground that he who asks equity should do equity; but it has long since been firmly established. 2 Story’s Eq. I 1414; 1 Roper on Husb. and Wife 260; Elibank v. Montolieu, 5 Ves. R. 737; Newenham v. Pemberton, 17 Law J. Equity N. S. 99; 1 Lead. Cas. in Eq. 468.
There seems to be one exception to this general rule, and that is, where the property is in its nature legal, but the aid of a court of equity is invoked for its recovery on some collateral ground of jurisdiction; as, in the case of a mortgage debt recovered in a foreclosure suit. There, the wife’s equity attaches solely on the ground that he who asks equity must do equity, and therefore cannot be asserted in a suit brought by her. 1 Roper on Husb. and Wife 258, 260.
'x'The argument of the counsel for the appellees, that the doctrine of the wife’s equity, recognized and acted on by this court, is that which had been settled in England at the time of the establishment of our chancery court, and that we must therefore look only to the English decisions prior to that time to ascertain the law upon the subject, is, I think, untenable. The subsequent English decisions are, of course, not binding upon us; but they are entitled to great respect, and at least as much on this question as on any other.
Having stated so much of the doctrine as seems to be pertinent, I will now endeavor to apply the law to the facts of this case.
There can be no question but that the doctrine applies to Mrs. Poindexter’s portion of her father’s personal estate. That estate at his death devolved on his personal representative. His distributees at law, of whom she was one, could recover it only in equity. She asserted her claim to an equitable settlement out of her distributive portion before it was received or recovered by her husband, and before the report of partition of the estate was confirmed by the court. And though the report was confirmed and her portion received before the decree sustaining the settlement which had been made upon her by her husband, yet the confirmation was expressly subject to the future order or decree of the court upon her petition for a settlement which she had previously filed. The deed of settlement of the 20th of October 1852 was certainly executed before her husband received possession of her portion or any part of it; and that settlement, having afterwards been sustained by the decree of the court, is valid (if properly sustained), notwithstanding possession of the property was received be-tweeen the dates of the deed and of the decree. The argument of the appellee’s counsel, that the administrator of Bowyer, being also one of his distributees, by bringing *the suit for partition, elected thenceforward to hold the subject as distributee and not as administrator ; that the possession of one parcener is the possession of all; and that therefore Poin-dexter was in possession of his wife’s portion of the personal estate before she claimed her equity, cannot be sustained. The administrator did not cease as such to hold the personal estate of his intestate, so far as the record shows, until it was actually distributed; until which time it was assets in his hands, and he was not bound to distribute it without refunding bonds.
Nor can there be any doubt as to the propriety of the decree approving and confirming the said deed. The settlement thereby made was certainly not excessive, in view of all the circumstances of the case. And the husband being insolvent and unable to support his family, it was properly provided in the deed that the property should immediately enure to the benefit and maintenance of the wife and children. The deed may not be in such form as the court would have prescribed; but the wife being satisfied with it, and having petitioned for its confirmation, the court properly confirmed it, as it did not prejudice the rights of the husband’s creditors.
Then as to the real estate: Was the wife entitled to an equitable settlement out of her husband’s interest in that estate (assuming the doctrine to be applicable to real estate)? She derived it by descent from her father, who at the time of his death was possessed thereof and had a legal title thereto. Her husband had no occasion to go into equity to obtain possession or complete his title. If any remedy had been necessary by reason of the act of a wrongdoer in taking or withholding possession, it would have been a legal remedy. But none was necessary. There was no interruption, either of the title or possession, both of which devolved at once upon the heirs at law of her ^father as coparceners. *853 The possession oí one was the possession of all the coparceners. 1 Horn. Dig. 489, marg. And the seizin of one was sufficient to entitle the husband of another to be tenant by the curtesy. Id. 69, marg. | 14; 1 Bright on Husb. and. Wife, p. 117, ch. 10, | 1, Nos. 6 and 7. But here all were actually seized, so far as the record shows. Momentary seizin is sufficient to complete the husband’s title. id. No. 9. But in this case there has been no interruption of his seizin. A husband by becoming possessed of his wife’s freehold estate of inheritance during the coverture, acquires a freehold interest during their joint lives, if there be no issue of the marriage, and during his own life, if there be such issue. In the former case, he and his wife are seized in her right, and in the latter he is seized in his own right as tenant by the curtesy initiate, and may maintain an action in respect to his freehold interest in his own name only. Id, p. 112, ch. 9, No. 1, 6, 8 and 9. In both cases, his interest is unconditional and unencumbered, and is .subject to his right of disposition and liable to his debts. In this case, there being issue of the marriage, the husband became tenant by the curtesy intiate of his wife’s interest in her father’s real estate, and his freehold estate thus acquired is not liable to his wife’s equity. That such an estate is not so liable, necessarily results from principles before stated, and has been expressly decided, not only in New York; Van Duzer v. Van Duzer, 6 Paige’s R. 366; Wickes v. Clarke, 8 Id. 161; but also by this court; Dold’s trustee v. Geiger’s adm’r, 2 Gratt. 98. In the last mentioned case, Doló and: wife brought a suit to recover her share of her father’s real and personal estate on the ground that he had died intestate. After a protracted litigation, the intestacy was established and the plaintiffs succeeded. Pending the litigation the wife, by her next friend, filed a petition, praying that her share of the '^estate might be settled on her; and the husband by his answer assented. The Circuit court decreed accordingly ; but with a proviso that the rights of the husband’s creditors which ■may have attached upon the property before the execution of the settlement, should not be affected. The decree further confirmed a division of the real estate that had been previously made, and directed the wife’s share to be delivered to the trustee, to be held for her separate use. The suit for the account and distribution of the personal and profits of the real estate, thereafter proceeded. The result of the suit showed that the share of the wife, exclusive of her share of the slaves, amounted to about four thousand five hundred dollars, much the larger part of which arose from the rents and profits of the real estate, hires of negroes and interest on personalty accruing during the pendency of the suit; and that her share of the slaves was in value about two thousand seven hundred dollars. This subject was by the decree of the Circuit court charged with a debt of the husband due by judgment, amounting in the aggregate, at the date of the decree, to about one thousand five hundred dollars. The trustee of the wife appealed from the decree, which was affirmed by this court. Judge Stanard thus concluded his able opinion in the case, in which the other judges concurred: “In respect to the rents and profits of the real estate, he (the husband) was at law and in equity absolutely entitled to them. Of that real estate there-had been actual possession, by virtue of such actual possession by one or more co-parceners, and they were accountable at lau-to the husband for the rents and profits, and he might sue therefor without joining the wife. This subject ought to have been charged, though the principal of the distributable share of the personal estate should be protected in the hands of the' wife and her trustee by the relinquishment of the husband. To'’’the tenancy by the curtesy of the husband in the real estate, he had legal title; and that was clearly chargeable with his debts, irrespective of his voluntary surrender thereof to the wife.”
The husband’s title as tenant by the curtesjr having thus become complete, and not being liable to the wife’s equity while the estate was held in coparcenar3>, no slate of things which could afterwards arise could subject his interest to that equity. It then stood upon the same footing with his other property, and became alike subject to his right of disposition and the claims of his creditors. Therefore, he or his assigns or judgment creditors had a right to go into equity to have a partition of the real estate, and an allotment of his wife’s porfíen thereof; and his judgment creditors han a right to the aid of that court in enforcing the lien of their judgments by a sale of his interest, without being subjected to the condition of a settlement on his wife or any other condition whatever. A parcener acquires no new right, nor is his old right enlarged by a partition. He is entitled to a partition as a legal incident to his estate in coparcenary; and it is merely a different mode of enjoying the estate, to which he may resort at his election. While the estate is held in coparcenar3-, his seizin is of an undivided interest, and pervades the whole estate. After the division and allotment, his seizin is confined to his several share, but as to that, is exclusive. And so too a judgment creditor of the husband coming into equity to enforce the Hen of his judgment by a sale of an interest acquired by the husband in the wife’s real estate, is seeking no new right nor to enlarge an old one, but is merely pursuing a remedy expressly given him by law to effectuate a legal lien upon his debtor’s property. The wife having no inherent equity in such a case, can acquire none from the fact that she is a defendant to the suit. The *maxim that he who asks equity must do equity, does not apply to the case. Hanson v. Keating, 30 Eng. Ch. R. 1.
The wife’s equity attaches, as we have *854 seen, only when resort must be, or is actually, had to a court of equity to reduce her property into her husband’s possession, or complete his title thereto, and not when resort may be had to that court for any purpose after such possession has been obtained and title completed. The Special court of appeals decided otherwise in James, &c. v. Gibbs, &c., 1 Pat. & Heath 277; but, with the highest respect for the opinions of that court, I must say that I think the decision contrary to settled principles of law, if not to the decision of this court in Dold’s trustee v. Geiger’s adm’r, supra. And I am confirmed in this view by the fact that one of the learned judges who concurred in the decision of the Special court, afterwards decided this case otherwise in the court below, and must therefore have changed his opinion.
But it is argued by the counsel for the appellants, that as advancements had been made by the intestate to his children in his lifetime, a resort to a court of equity was indispensable to settle an account of the advancements, and ascertain the share to which each of the children was entitled in the partition of the estate; and that -therefore the wife’s equity attached to Mrs. Poindexter’s share as well of the real as of the personal estate. I do not think this conclusion correct. Notwithstanding the fact that advancements happened, to have been niade to 'the children, the heirs had a legal title to, and were in possession of the inheritance to the extent of their respective interests, from the death of the ancestor. The title and possession of each parcener as to his undivided share was then complete. The occasion which afterwards arose to go into a court of equity for a partition of the estate *and an allotment of the several portions, cannot affect or impair the right of any person concerned. The account of. advancements is a mere incident of the partition, affecting of course the extent and amount of the several portions, but not the title of the parceners. The distinction is between going into equity to complete the husband’s title, and going there for some purpose in regard to the property after the title is completed. In the former case, the wife’s equity attaches; in the latter, it does not. Going into a court of equity for an account of advancements and partition of real estate descended and in possession of the heirs, is a case of the latter kind. And so is going there to enforce a judgment lien upon a'husband’s interest in his wife’s portion of the estate.
It is further argued, that it does not appear of what the advancements consisted, whether of real or personal estate; and that Poindexter and wife may have been entitled to more personal, and less rea^estate than they received in the division. See Code, p. 525, ch. 123, § 15. The answer to this argument is, that the partition was fairly made, was not excepted to, and has been confirmed by the court. It must therefore now be considered that they received their due and relative portion of the real and personal estate.
I think there is no error in the decree of the Circuit court, and, am for affirming it.
The other judges concurred in the opinion of Moncure, J.
Decree affirmed.